Good morning and may it please the court. My name is Anthony Long and I represent Charlie Patrice who challenges his conviction for accessory after the fact perjury as well as his 108 month sentence. Patrice and his co-defendant Eric Mothmas are former detectives of the Department of Public Safety for the Commonwealth of Northern Mariana Islands. Mothmas was convicted of charges which included drug offenses. Patrice was convicted of being an accessory after the fact to the drug offenses. Patrice contends the evidence is insufficient to sustain his conviction for accessory after the fact or alternatively he should receive a new trial on that charge based on the denial of his request for a continuance. The evidence is so insufficient for the accessory after the fact that the prosecution failed to establish all of the essential elements necessary to support the conviction. First, the prosecution did not prove beyond reasonable doubt that Patrice was assisting his co-defendant Mothmas as opposed to himself. Secondly, the record does not show that Patrice possessed the knowledge of the essential elements of the underlying offenses for accessory after the fact. The underlying offenses being conspiracy to possess and distribute drugs and possession with the intent to distribute. But why doesn't helping the principle destroy the evidence and then suborn the perjury of another witness who is testifying against Mothmas show a classic example of accessory after the fact? Well, the problem with that is several fold. One is that for there to be accessory after the fact, the underlying offenses have to be completed first and I'm of the position that the evidence... But that's not what our case law says, does it? Yes, the case law says because of the plain reading of the statute, it requires the underlying offense to be completed. But the overlay here that you have I think that distinguishes those cases is the fact that you've got an ongoing investigation and so as I understand the theory of the prosecution, your client was convicted because of the actions that he took to thwart the investigation, not to necessarily further the drug trafficking by Mothmas. The question was to hide what had happened. That's correct, but the problem is that at the time that Mothmas is alleged to have, excuse me, that Patrice is said to have done these acts, the for instance conspiracy was still ongoing. But it had been, when you have a continuing offense, it's both completed and ongoing, right? In other words, there was a conspiracy and had there been an arrest at that point, there would have been a completed conspiracy, right? So in other words, it was a completed offense, conspiracy. It continued after that, but it was already completed earlier, was it not? No, the opposition is from the record that... But everything that had occurred would have been sufficient for a conviction at that point had they been able to apprehend the guy rather than being delayed by Patrice's actions. Correct. If it happened then, but you see, as I understand the law, then essentially what Patrice may have done would have been aiding and abetting as opposed to being an accessory after the fact because the offense was still ongoing. Substantive distribution counts. I mean, you had Moffness charged and convicted of actually distributing drugs and that had occurred prior to the date on which the burn occurred and prior to the date on which the obstruction through perjury occurred. No, well, there is evidence in the record that Moffness gave Cabrera drugs even after that. But that doesn't matter as long as there was a position with intent. It seems to be down there twice. Well, that's an actual distribution. They're two separate. No, it isn't. Anyway. Oh, I see. It's conspiracy to distribute and possess. The possession was intended to distribute. So after the possession was intended to distribute, there were completed such acts. There was completed possession was intended to distribute. Well, there were some completed acts in the opposition and the evidence shows that there was one afterwards. But in fact, too, there was one other distribution to Cabrera that occurred sometime in 2004. But why does that matter? I mean, as long as it was a completed one. My problem, it seems to me if there's a problem in this case, it has to do with one of the other things that you said, which is if one looks at the state, if one thinks the statement to Cabrera is the only possible basis for an accessory after the fact, then it does appear that he was just as much protecting himself as protecting Mathis because the investigation was into both of them. But so my question is, why are we just looking at that? I mean, why wasn't the statements to the other police and then to the FBI and then to the grand jury about the burning of the drugs that never happened in order to deflect the apprehension of Mathis for what he'd done. Why isn't that sufficient? Well, that could also be viewed as him trying to protect himself to an extent, but even more so as we understood the prosecution's theory of the case is that their position for accessory after the fact essentially rested on the conversation with Cabrera. Now, with respect to the theory was basically the Starsky and Hutch team, the thin blue line, that you got to back your partner's play here and your partner's kind of in a jam and now the captain is coming down on us and now the FBI's here and they want to know what your partner did with these drugs that are missing from the evidence room. And as I understand the prosecution's theory, the theory was your guy backed his partner and helped him cover it up? Well, what the evidence shows is that Patrice said that they destroyed the drugs, but what the evidence is lacking on that is that the evidence is lacking to show that Patrice knew that Mathis was actually selling the drugs or that had conspired with Cabrera to distribute the drugs. Isn't that a jury question that they could infer from the fact that supposedly burned and when he claimed that the CNMI attorney general authorized him to burn the drugs, that that's all basically the cover-up? Well, we would say that that essentially shows that would make him an aider and abetter as opposed to accessory after the fact. He might have been able to sustain a theory on aiding and abetting, but what's improper in the prosecution choosing an accessory after the fact theory on this record? That's, I think he might be able to make a case out for either. Yes, but one of the problems we see is that we don't know exactly which theory the jury returned the verdict on. The jury verdict is actually admirably consistent because they acquitted him of the conspiracy on the theft and on the actual theft and they seem to have been very clear-minded about what they were doing. Correct, but as we see it with respect to the conspiracy aspect that since the conspiracy was initially ongoing through February 4, he could not aid and abet that theory. But there were two conspiracies charged against Maffinis, right? Yes. The aiding and abetting only dealt with the second one, not with the first one. Correct. And it was possession with intent to distribute, it was conspiracy to possess with intent to distribute and also possession with intent to distribute. So, I mean, you keep, your argument, while creative, keeps switching gears because as soon as we ask a question about one of them, you go into another one and it's not, it's kind of a moving target. With regard to the completion question, you agree that there was a completed possession with intent to distribute before all the, which the, the, the, the. Yes, Your Honor, there had been some. Telling the stories about the burning of the, of the drugs. Correct. There had been some completed distributions before that. Right, so that's what you need for conviction because it says, knowing that an offense or offense against the, had been committed to with conspiracy and possession with intent to distribute. And there's all kinds of law that says that and means, and or are interchangeable in an indictment. So, therefore, as long as they found that he was knowing an offense, that there was a possession with intent to distribute methamphetamine, it was completed, that's good enough. The conspiracy doesn't have to be completed. Well, to that extent, I understand what you're, what you're saying, Your Honor, is that to the fact that there had been some distributions that had been completed at the time the act occurred, there was a completed offense. However, then we go to the other element. Okay. The element that's lacking. Now, let's go to the other element. Now, that's why they're sort of interrelated. Now, there's no evidence to show that Patrice knew Mofftis was distributing the drugs or that had distributed the drugs. To answer that, he knew, first of all, why else would he be taking these large amounts of drugs? Second of all, he, I understand that the evidence, there is evidence that he was present in at least one of these, one of these exchanges with Cabrera took place. He was in a car next to, two feet away. Right? So, he knew that this guy was having dealings with a known drug dealer. Well, he was there informant. So, there's nothing to suggest that he knew at that time that Mofftis was supplying Cabrera with drugs. Nothing at all to suggest that. And there's nothing to suggest that he knew that, quote, that Mofftis was, you know, distributing. I mean, it could be speculation. Yes. But how much do we defer to the jury's common sense in looking at two drug detectives who sort of live in that netherworld who are dealing with informants who are drug users and drug dealers all the time? I assume there was testimony as to what they normally did for the Department of Public Safety. And why can't the jury couple that knowledge with the testimony that Judge Berzon just quoted from and conclude that he knew? Well, our position would be that that would be based more on some of the speculation and not a part. But juries are allowed to do that. They're allowed to make inferences from circumstantial evidence. The question is, I guess as a matter of law, whether that, this evidence is sufficient to permit them to reach that conclusion. Correct, Your Honor. And it's a pretty logical conclusion based on what these guys did in the burning of the drugs and so on. We acknowledge the jury can make reasonable inferences from the evidence. I guess to put it concisely, we know he knew that this guy had taken a large amount of drugs, quite a very large amount of drugs, as I understand it, from the evidence room and done something with it. Right? He knew that much? Yes. And it's not a pretty good inference what he did with it? I mean, we could speculate. Maybe he had his own drug habit. I mean, as opposed to distributing somebody else's. He kept it for himself. Yeah, I mean, over time. I mean, that would just be pure speculation. We don't know. And that's the point. Well, the jury did hear testimony as to what ice is and how potent it is and the quantities, right? The jury heard testimony, yes, concerning methamphetamine and what they said the quantities were involved here. But those are issues that we like to get to in relation to the sentencing that I think it's a little unclear. But the jury needs to hear that in order to determine whether the possession was with intent to distribute as opposed to with intent to use for personal use. That could be based on the amount. I will acknowledge that based on the amount that they could say that if it was 46 grams that you could say that, well, that's a little bit more than someone we need for their own personal consumption. And that's an to draw, right? That is an inference. Correct. All right. But now going to the sentencing, which your time is up, I'll give you about two minutes to do the sentencing. All right. So let me say we think that there is issues, fundamental issue with respect to the judge determination of the drug quantity and the drug amount. Then the indictment, which charged the assessor after fact, there is no mention of the drug quantity. While that is important is that Bucklin requires the drug quantity to be included because I can affect the statutory maximum of which Patrice would be subject to. For instance, if it's more than five grams of methamphetamines, 50 grams of substances. Can you go back to Bucklin? The law seems to have moved on. No, well, this circuit is held that Bucklin survives. Yeah, but the Supreme Court, we've also held in connection with this, just these kinds of challenges that the judge can make judicial fact finding with regard to quantity and determining the sentence. Correct. But under Tolliver, this court's decision in Tolliver, the judge's fact finding cannot exceed the quantity amount found by the jury for purposes of sentencing. That's not true, but it can't affect the statutory maximum. Correct. So how is this effective? The judge can make a finding that wasn't found by the jury for purposes of applying the advisory guidelines and for purposes of applying the 3553 factors, but it can't affect the statutory maximum. So your burden is to demonstrate that somehow this affected the statutory maximum. Well, actually affect the statutory maximum in the sense that if, for instance, if it was no quantity found, then under this court's decision, U.S. Thomas 355 fed 31191, you look to the minimum amount of quantity with the minimum and the minimum sentence would be... For purposes of what the statutory maximum is. The statutory maximum would be 10 years, excuse me, 20 years, which would have, would be 10 years for purposes of a century after the fact. What do you get? 108 months. Excuse me, but in Thomas, it was confronted with the same fact. The fact that the defendant was sentenced within that range doesn't change the fact that the, uh, the judge by, that the statutory maximums were different. Your time is up. Thank you very much. And you're wrong about, about, um, Booker. But thank you. May it please the court. My name is Timothy Moran. I represent the United States in this matter. I would, uh, like to first turn to the accessory after the fact charge. The evidence was sufficient... Can I ask a supervening question about the accessory after the fact charge? Um, the language of the accessory after the fact charge, which is probably anciently old, uh, says that, um, the person has to receive, relieve, comfort, or assist the offender in order to hinder preventive apprehension, et cetera. And ordinarily, that's, you know, hiding the guy or helping him escape or feeding him or, or something like that. Um, are there cases which apply it to this kind of essentially cover up which other, which one would think is ordinarily an obstruction of justice or something like that rather than accessory after the fact? It's a strange use of this, of this, um, statute, is it not? Well, I, we did, I mean, we did consider it pretty carefully when we added it to the superseding indictment. I think it does fit what this defendant did if you take into context the fact that, uh, he is a police detective, a drug detective, and that in some sense places, uh, a greater obligation to relieve, comfort, or assist the offender. You'd say he, he didn't receive, relieve, or comfort him. You'd say he assisted him. Well, he. He assisted him essentially by obstructing justice. He assisted him to elude, uh, apprehension and trial in two ways. Uh, he kept, he constantly tried to deflect attention from his partner. I mean, maybe he did it by his words, uh, but it's, it's effectively the same thing as trying to, for example, change the license plate on a car or hide a guy. I mean, he is trying to, he, when you change the license, I mean, there are cases, I think, uh, Burnett is a case cited in my brief in which a person was found guilty for accessory because they're caught with the screwdriver in hand literally trying to change the license plate. Just for my information, do you know of any case that's where, what was the accessory after the fact was essentially lying as a cover-up? About, not about where he was or who he was or anything like that, but about what happened. Uh, at this time, I can't cite you a case in which it's, it's simply lying. Um, I think there is, uh, lots of case law, Hopson, Burnett, and Taylor, for example, which make it clear that if you attempt to divert suspicion from your, the, the principle, that constitutes an accessory. And certainly the evidence was sufficient to show all the elements here, but no, Your Honor, I can't cite you a case that, in which it was straight lying. Um, but that's not all that he did. I mean, why is this any different from, let's say the FBI or the police are on the trail of the fugitive and they show up at the defendant's house or the accessory defendant's house and they, and he's hiding the defendant in his basement and they say, do you know where the fugitive is? And the defendant says, he went that-a-way. And so the posse thunders off and in, in that way helps him to elude apprehension. Why, that, that seems to me to be kind of a classic case of true lying. I think this, I think Your Honor is right. I think this does match the classic case. It's lying, but it's lying to, to prevent his apprehension, trial, and punishment. In other words, it's lying so you can't find the guy. Here they, there was no problem finding the guy. It was lying about the underlying facts, not about, not about where the guy was, who he was or anything like that. And what's important here as well is that when he lied, he knew that Moftis had engaged in a drug conspiracy and that he distributed, he had possessed the drugs with the intent to distribute. The drug fact occurred in May 2003. The acts for which Patrice was found guilty as an accessory occurred in December and January 2003-2004. In addition, rather fact than the ones that came out during my, the opponent's earlier in December when the heat starts coming on, there was another conspirator, Frankie Moftis, a.k.a. Kojak, who was Moftis' brother. Patrice orchestrates a false, a false warrant on Frankie Moftis. The, the local C&MI detectives bring him. All right. So, so Frankie was involved, was not involved in the theft, but was involved in it. So, so that's, that's a link directly. Right. Another, he's another drug conspirator, another street-level dealer, first brother. And Patrice orchestrates the warrant that when they bring him in, the S.S. brings him in, the locals, they trump up a false, they actually sign a, Patrice drafts a false warrant with a local judge's signature block. Another detective signs it for him. They go out and survey. They bring Frankie Moftis in and say, okay, now we've brought you in. We're going to make you a local DPS drug informant. There was a relationship between DEA and the locals whereby DEA didn't go after local informants and the locals didn't go after DEA informants. They knew that this was a way of insulating one of the co-conspirators from DEA detection. The point is that Patrice, and this is in December when the rumors are starting, Patrice participated in that. So, and that was with, with the S.S. And then Patrice says, I don't know where the IC is. You have to ask Eric. And then three days later, on the same day the FBI conducts his search, his story is, I do know what happened to the S.S. But that has to, that could simply go to the theft and not to the possession with intent to distribute. So, it doesn't add to any knowledge about the possession. Right. But there was no evidence whatsoever in the record that Moftis was in any way a drug user. And his partner and bosom buddy would have had certainly reasonably infer about Moftis' drug usage, if any existed, when in fact, none did. So, there's another basis for the jury to rationally infer that the drug theft was connected to, with an intent to sell it. So, so does your, does the, assuming that your whole theory about accessory after the fact is a viable theory, does it turn in any way on, on the Carrera statement? Because the Carrera statement does seem to bother me, only in the sense that he, there's every reason to think that he was protecting himself, at least as much as he was protecting that. I think the Carrera statement is one piece of evidence that the jury can rely on, but it's part, it's one of several. The Frankie Moftis warrant, the false statements to FBI, the false statements to the grand jury, the false statements to S.I.S., the refusal to tell his captain when he did in fact know it, which is effectively diverting attention away. And I also want to address this contention that Patrice makes, that A, you can't be helping yourself as well as the, the principal, and B, that the act, the conduct to which you're an accessory has to have completely ended. He relies on one case for that, that's U.S. v. Taylor. Taylor found that the facts were sufficient for the accessory after the fact charge. And Taylor, Taylor was a, was a, was a case where a, someone, they went and killed a drug informant, and Taylor was aided and abetted and was found guilty of aiding and abetting an accessory. Aiding and abetting obviously makes him guilty as a principal. Taylor stands for the single proposition that you can't be guilty as a principal and as an accessory, otherwise you'd have double liability in every single case. It would be redundant. It was a, Taylor says that's double counting. Taylor, but. And you'd be punished more harshly, right? Right. If you're an aider and abetter, you're punished as the principal. If you're an accessory, you get a break. It's only 50 percent. Right. So it would be, it would be redundant double counting. But Taylor specifically says that the facts were sufficient to prove accessory after the fact. This court's jurisprudence in Hobson and Burnett and Taylor have all said that the escape phase is part of the phase. So the classic case is part of the crime substantively. So the classic case of accessory, the, he's hiding out in the basement and you send the cops that way, occurs during the escape phase. That is part of the crime. So the crime, the accessory can contribute to an ongoing crime. That's what the case law says. Taylor was very clear that the facts were sufficient to prove accessory after the fact. The judge, that argument was made and the district judge said he was troubled by it, but he would leave the, he found that the facts were sufficient, but he left the, and he left the district judge to deal with it. And frankly, I think the decision made sense because you shouldn't be guilty as a principal and as an accessory in the same case. That's the issue of law to which my, to which Patrice cites. But Taylor does not say that you must, that you cannot aid your own, that your aid as an accessory can't also help yourself because by helping the principal, you make yourself an accessory and you expose yourself to that and if you succeed in getting the principal off, obviously you've gotten yourself off as well. So of course, all aid rendered to the principal will also help the accessory because if there is no principal, there can be no accessory. Clearly thwarting the investigation would benefit both. Yes. Because they're both under suspicion at that point. Right. And Patrice is under suspicion because of his aid to Moffness. Because he's Moffness's partner and the drugs are gone and somebody needs to explain what happened. Right. I mean, if an accessory is successful in his accessory behavior, the principal never gets convicted and the accessory can't be an accessory to anything. So of course, the point of being an accessory is to aid the principal and yourself. And I see him over time, but I did want to address, if may, briefly the sentencing argument. There is no apprendee error here because there was no mandatory minimum sentence and the statutory minimum was not passed the statutory maximum. Right. Furthermore, there was a jury verdict of ICE of more than five grams. In the excerpts of record where the verdict is found on page 72, the jury clearly found five grams or more of ICE as to both count three, the conspiracy, and count four, the drug possession. And you had to, Patrice must be an accessory to something. He's an accessory to that drug conduct for which the jury clearly found the facts that would have been relevant under apprendee if apprendee were involved, which is not. So effectively, there could have been no apprendee error. And in fact, there was no apprendee error. And this court's jurisprudence is clear in that the last case that I saw was U.S. v. Ingham, which came out on May 22, 2007, which made it clear that the judge, as long as he's not a statutory maximum implicated, exceeded, or a mandatory minimum, it is the testified, Cabrera testified, Abel testified, there can be no doubt. Thank you, Your Honor. Thank you, counsel. The case of United States v. Patrice is submitted. And you are in recess for the morning. Thank you.
judges: Thompson, Berzon, Tallman